UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRIAN TUITT,

                            Plaintiff,
                                                                9:11-CV-0776
v.                                                              (DNH/TWD)

P. CHASE, M. LOPEZ, N. BENWARE,
LIEMUEX, REDEL, JOHN DOE 1-3,

                            Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

BRIAN TUITT, 06-A-1963
Plaintiff *pro se*
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

HON. ERIC T. SCHNEIDERMAN                    CHRISTOPHER W. HALL, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable David N. Hurd, United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Brian

Tuitt alleges that Defendants conspired and retaliated against him for filing grievances by filing a

false misbehavior report against him, removing him from the Sex Offender Counseling and

Treatment Program, wrongfully placing him in the general population, and transferring him to a

different facility. (Dkt. No. 1.) Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 23.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

## I.   BACKGROUND

The following facts are derived from the face of the operative complaint and are accepted as true for the purposes of deciding the pending motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

In 2008, Plaintiff was mandated to enroll in the Sex Offender Counseling and Treatment Program ("the Program") at the Clinton Annex. (Dkt. No. 1 at 4.) The Program uses various therapeutic techniques to help participants recognize behaviors that may lead to committing sex offenses. *Id*. Participants in the Program are required to accept responsibility for the conduct that resulted in their criminal convictions. *Id*.

In February 2008, Plaintiff filed a grievance. *Id*. One of his reasons for filing this grievance was that he was having trouble "accepting responsibility" as required by the Program because he was appealing his conviction. *Id*. However, counselors and staff in the Program worked with Plaintiff on this issue and Plaintiff ultimately excelled in the Program. *Id*. at 4-5. Plaintiff was appointed as a team leader for the Program. (Dkt. No. 1 at 5.) He earned college credits, made goals, assisted other inmates, examined his behaviors, and applied Program techniques. *Id*. at 6.

Plaintiff was informed in January 2010 that he would complete the Program. *Id*. at 5. Thereafter, however, Plaintiff "started to get excuses from staff when [he] was not selected to

finish the program." *Id.*  Defendant N. Benware[1] told Plaintiff that he would not complete the program due to his many court appearances and his failure to confess to each and every element of his conviction offense.  *Id.*  Plaintiff complied but this did not satisfy Defendant Benware.  *Id.*

Plaintiff filed a grievance and a state court action.  (Dkt. No. 1 at 5.)  On February 11, 2010, Plaintiff filed another grievance regarding Program "policies and threats of being removed."  *Id.*

Plaintiff was away from the Clinton Annex from March 12, 2010, to April 12, 2010, attending court hearings in New York City.  *Id.* at 6.  While he was gone he received two packages from Westfields Comic.  *Id.*  Plaintiff alleges that Defendant Lieutenant P. Chase,[2] Defendant Counselor Lopez,[3] Defendant Benware, Defendant Correction Officer Liemuex,[4] and John Doe 1-3 "reviewed the contents of the package[s] . . . , saw some questionable material which might violate [Program] policy, arra[ng]ed for the plaintiff to pick up the package[s], snare the plaintiff with the material, issue a misbehavior report and attempt to remove the plaintiff from the program and/or delay his date of finishing the program."  *Id.*

On April 14, 2010, Plaintiff was informed by the package room officer that his magazines

---

[1]     Defendant N. Benware is a licensed social worker for the Program.  (Dkt. No. 1 at 2.)  He interviews, tests, and counsels participants in the program and is responsible for treating and monitoring them.  *Id.*

[2]     Defendant Chase is in charge of security for the Program.  (Dkt. No. 1 at 2.)  He also acts as the hearing officer when an inmate from the Program receives a misbehavior report.  *Id.*

[3]     Defendant Lopez is the Senior Counselor of the Program.  (Dkt. No. 1 at 2.)  As such, he oversees the Program and maintains the welfare of the inmates and staff.  *Id.*

[4]     Defendant Correction Officer Liemuex works in the general population at Clinton Annex and is responsible for the safety and welfare of the inmate population.  (Dkt. No. 1 at 2.)

were at Media Review and that he would have to wait several days to receive them. *Id*. Plaintiff

received a large manila envelope the next morning from Media Review. (Dkt. No. 1 at 6.) The

envelope contained magazines and a letter. *Id*. When Plaintiff opened the envelope, Defendant

Liemuex walked up to Plaintiff, confiscated the magazines, and told Plaintiff that the magazines

had to be re-reviewed by staff. *Id*. at 6-7. Later, Defendant Liemuex issued a misbehavior report

charging Plaintiff with possessing unauthorized material. (Dkt. No. 1 at 7; Dkt. No. 1-1 at 4-5.)

Plaintiff filed a grievance, claiming that he was being retaliated against. (Dkt. No. 1 at 7.)

On May 3, 2010, Plaintiff attend a Program community meeting. *Id*. At that meeting,

Defendant Lopez "addressed the community in an angry . . . speech about failures and punishing

people." *Id*. Turning to Plaintiff, he stated that "the inmate that was caught with pornography . .

. will be punished and will go to the box." *Id*. This speech "confirmed to the plaintiff that his

hearing outcome was pre-determined . . . ." *Id*.

Plaintiff told Defendant Chase, the hearing officer, that Defendant Lopez had publicly

pre-determined Plaintiff's guilt. *Id*. at 7-8. Defendant Chase angrily refused to believe Plaintiff.

(Dkt. No. 1 at 8.) Defendant Chase then conducted a biased disciplinary hearing. *Id*. at 8-9.

Plaintiff was found guilty, removed from the Program, sent to another part of the facility, and

kept in keeplock for thirty days with loss of all privileges. *Id*. at 9.

Plaintiff appealed the result of his disciplinary hearing. *Id*. at 10. When his appeal was

denied he filed a proceeding in New York state court pursuant to Article 78. *Id*. In February

2011, the Deputy Superintendent of Security at Coxsackie Correctional Facility reversed and

expunged the disposition of the hearing that Defendant Chase conducted. (Dkt. No. 1-1 at 45.)

Thereafter, Plaintiff received a letter from an assistant Solicitor General informing him that the

office would not be contesting the Article 78 proceeding. (Dkt. No. 1 at 14.) By the time this occurred Plaintiff had already served his keeplock sentence.

When Plaintiff was moved to serve his keeplock sentence, an unknown block officer placed a paper marked "SOP" (an acronym for "Sex Offender Program") in Plaintiff's cell. *Id*. at 9. "This sign clearly marked the plaintiff's cell and its occupant [as] a sex offender. This cell is in front of a general population dorm. This placed the plaintiff in fear of his safety." *Id*. at 9-10. Defendant Chase "visited the location and did not do anything to remove this sign." *Id*. at 10.

While Plaintiff was serving his keeplock sentence, another inmate informed Plaintiff that he had overheard Defendant Chase telling John Doe 1-3 that he was "going to take care of Tuitt and put an end to our problem." *Id*.

Plaintiff finished his keeplock sentence on June 2, 2010. *Id*. As he was packing, he received an Involuntary Protective Custody ("IPC") referral ticket issued by Defendant Chase. (Dkt. No. 1 at 10.) As a result, Plaintiff had to remain in confinement until a hearing was conducted. *Id*. Defendant Chase told Plaintiff that he could not file a grievance because the issue was non-grievable. *Id*. Plaintiff filed a grievance anyway. *Id*.

The hearing was conducted on June 7, 2010. *Id*. Plaintiff and Defendant Chase testified. *Id*. at 10-11. Defendant Chase testified that placing Plaintiff in IPC was Defendant Redel's[5] idea. (Dkt. No. 1 at 11.) The hearing officer released Plaintiff from IPC. *Id*.

When Plaintiff returned to the Program, Defendants Lopez and Benware "admitted that

---

[5]        Defendant Correction Officer Redel works in the law library at Clinton Annex and oversees the operation and safety of the inmates who work in and use the law library. (Dkt. No. 1 at 2.) Previously she was assigned to work in the Program for several months. (Dkt. No. 1 at 2.)

they arranged for the plaintiff to be caught with the magazine and to give him a harsh punishment to teach him a lesson." *Id.* Defendants Lopez and Benware told Plaintiff that he would have to "openly admit that he has a problem with pornography . . . and it was part of his cycle to commit sex offenses. If the plaintiff did not, he would be removed from the program and would be considered in denial." *Id.* Plaintiff complied. *Id.* However, Defendant Benware "was not satisfied with his presentation and wanted a better admission." *Id.* at 12. Defendant Benware's "behavior and attitude transmitted to the plaintiff that the defendant wanted the plaintiff to fail, get in serious trouble and he would make sure it would happen." (Dkt. No. 1 at 12.)

Plaintiff, "fearing that he would be subjected to a retaliatory attack," filed another Article 78 proceeding. *Id.* The court issued an order directing Defendants to allow Plaintiff to remain in the Program pending resolution of the proceeding. *Id.*

On or about July 14, 2010, after all the parties were served with the Article 78 pleadings, Defendant Benware became agitated and irate during a group session with Plaintiff. *Id.* This was despite the fact that, a few days earlier, he had informed Plaintiff that he was on the fast track to finish the Program. *Id.* Defendant Benware called Plaintiff a liar and told Plaintiff to stop filing grievances. *Id.* As a result, Plaintiff "lost all trust" in the Program and feared retaliation. (Dkt. No. 1 at 13.) He filed another grievance. *Id.*

Defendants Lopez and Benware removed Plaintiff from the Program and placed him in the general population, where he was at risk as an identified sex offender. *Id.* Defendants Lopez and Benware told Plaintiff that the Article 78 court's order meant nothing to them. *Id.*

A few days after Plaintiff was placed in the general population, Defendant Chase met with Plaintiff, informed him that he should not have been placed in the general population, and

told Plaintiff to pack his belongings and go back to the Program. *Id*.

Plaintiff was ultimately transferred out of the facility. *Id*. at 14. His Article 78 proceeding was then dismissed as moot. *Id*. Plaintiff believes that Defendants transferred him deliberately to avoid court action. (Dkt. No. 1 at 14.)

Plaintiff alleges that Defendant Redel prevented Plaintiff from accessing the law library in retaliation for Plaintiff filing grievances and court actions. *Id*. at 19. Plaintiff also alleges that Defendant Redel violated a court order by denying Plaintiff access to a notary. *Id*. at 20.

Plaintiff alleges that Defendants violated DOCCS Directive 4040, which prohibits reprisals by staff. *Id*. at 23-25.

Plaintiff filed this lawsuit on July 8, 2011. (Dkt. No. 1.) Plaintiff asserts thirty-five causes of action. *Id*. at 17-25. Plaintiff requests declaratory relief, injunctive relief, credit for the loss of thirty-seven days lost in the Program, compensatory damages, punitive damages, nominal damages, costs, and fees. *Id*. at 26.

Defendants move to dismiss the complaint. (Dkt. No. 23.) Plaintiff has opposed the motion. (Dkt. Nos. 27 and 31.)

## II.  LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means

that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III.    ANALYSIS

### A.    Official Capacity Claims

Plaintiff has sued Defendants in their individual and official capacities. (Dkt. No. 1 at 3.) Plaintiff has also, in Count 24, alleged that Defendant Benware acted in his "official capacity" when he called Plaintiff a liar. *Id*. at 22. Defendants move to dismiss the official capacity

claims.  (Dkt. No. 23 at 20.[6])  For the reasons discussed below, I recommend that the Court dismiss Plaintiff's official capacity claims without leave to amend.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-47 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-06 (1984).

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities.[7]  All DOCCS employees are state officials for the purposes of the Eleventh

---

[6]     Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than the page numbers assigned by the Court's electronic filing system.

[7]     *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued.  To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against

Amendment.  *See e.g. Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Tolliver v. NY State Correctional Officers*, No. 99 CIV 9555, 2000 WL 1154311, at *2 (S.D.N.Y. Aug. 14, 2000) ("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services.").  Therefore, I recommend that the Court dismiss Plaintiff's official capacity claims.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).  However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Id*. (citation omitted).  Here, better pleading could not cure the deficiency in Plaintiff's official capacity claims.  Therefore, I recommend that the Court dismiss Plaintiff's official capacity claims without leave to amend.

### B.    Conspiracy Claims

Plaintiff claims that each of the actions taken by Defendants was the result of a conspiracy.  (Dkt. No. 1.)  Defendants move to dismiss Plaintiff's conspiracy claims, arguing, *inter alia*, that the claims are barred by the intracorporate conspiracy doctrine.  (Dkt. No. 23 at 5-

---

a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . .  As such, it is no different from a suit against the State itself. . . . We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky*, No. 9:05-CV-0501 (GLS/RFT), 2007 U.S. Dist. LEXIS 8530, at *2, 2007 WL 433375, at *4 (N.D.N.Y. Feb. 6, 2007) (Sharpe, J.) (citing cases).

11.) Defendants are correct.

The intracorporate conspiracy doctrine states that employees of a single corporate entity are legally incapable of conspiring together. *Bond v. Board of Educ. of City of New York*, No. 97-cv-1337, 1999 U.S. Dist. LEXIS 3164, at *6, 1999 WL 151702, at *2 (W.D.N.Y. Mar. 17, 1999). "This doctrine applies to public entities and their employees." *Lee v. City of Syracuse*, 603 F. Supp. 2d 417, 442 (N.D.N.Y. 2009) (citations omitted). The Second Circuit has recognized the doctrine in the context of 42 U.S.C. § 1985, (*Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978); *Girard v. 94th and Fifth Ave. Corp.*, 530 F.2d 66, 72 (2d Cir. 1976)), but has not extended its application of the doctrine to conspiracy claims under § 1983. Several district courts in the Second Circuit have applied the doctrine, without discussion, to § 1983 cases. *See Samms v. Fischer*, No. 9:10-CV-0349 (GTS/GHL), 2011 U.S. Dist. LEXIS 97807, at *22 n.8, 2011 WL 3876528, at *15 n.8 (N.D.N.Y. Mar. 25, 2011) (collecting cases)[8]. In *Anemone v. Metropolitan Transportation Authority*, 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006), the Southern District squarely held that the intracorporate conspiracy doctrine should be applied to § 1983 cases. Like that court, in the absence of any authority to the contrary, this Court

> will continue to apply the intracorporate conspiracy doctrine to Section 1983 claims because the doctrine's logic is sound. A civil rights conspiracy requires an agreement between two or more actors to inflict an unconstitutional injury. This 'two or more actors' requirement cannot be satisfied where all of the alleged conspirators are employees of a single entity and acting within the scope of their employment[9] as agents of that entity.

---

[8]     The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

[9]     Even where the intra-corporate conspiracy doctrine applies, there is an exception to the doctrine where "individuals pursue personal interests wholly separate and apart from the

*Id.* (citation omitted).[10]   Therefore, I recommend that the Court dismiss Plaintiff's conspiracy claims without leave to amend.

### C.   Retaliation

Plaintiff claims that Defendants retaliated against him in a number of ways.  (Dkt. No. 1.) Defendants move to dismiss these claims.  (Dkt. No. 23 at 11-13.)

Claims of retaliation find their roots in the First Amendment.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).  Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights.  *Id*. at 381-383.  Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are difficult
> to dispose of on the pleadings because they involve questions of intent

---

entity." *Orafan v. Goord*, 411 F. Supp. 2d 153, 165 (N.D.N.Y. 2006) (citation and quotation marks omitted), *vacated and remanded on other grounds*, *Orafan v. Rashid*, No. 06-2951, 249 Fed. App'x 217 (2d Cir. Sept. 28, 2007).   Judge Hurd, the District Court judge assigned to this case, has found that a triable issue of fact exists regarding whether officers acted pursuant to their personal interests where a prisoner alleges that officers assaulted him in retaliation for participating in a federal lawsuit.  *Medina v. Hunt*, No. 9:05-CV-1460, 2008 U.S. Dist. LEXIS 74205, 2008 WL 4426748 (N.D.N.Y. Sept. 25, 2008).  Other courts have found that the personal interest exception applies, and thus allowed conspiracy claims to proceed, where it was alleged that officers conspired to cover up their use of excessive force.  *Hill v. City of New York*, No. 03 CV 1283, 2005 U.S. Dist. LEXIS 38926, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005). Here, Plaintiff does not allege that any of the Defendants engaged in excessive force or that they were pursuing personal interests wholly separate and apart from their DOCCS employment. Therefore, the exception is inapplicable.

[10]      On appeal, the Second Circuit affirmed the trial court's judgment but declined to address the intra-corporate conspiracy issue.  *Anemone*, 629 F.3d at 121.

12

and are therefore easily fabricated. Second, prisoners' claims of
retaliation pose a substantial risk of unwarranted judicial intrusion into
matters of general prison administration. This is so because virtually any
adverse action taken against a prisoner by a prison official--even those
otherwise not rising to the level of a constitutional violation--can be
characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other*

*grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly

suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendants took

"adverse action" against the plaintiff–namely, action that would deter a similarly situated

individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was

a causal connection between the protected speech and the adverse action--in other words, that the

protected conduct was a "substantial or motivating factor" in the defendants' decision to take

action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274,

287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir. 2001)).

Here, Plaintiff alleges that he engaged in protected conduct by filing a series of

grievances and court actions. (Dkt. No. 1.) The filing of a grievance against prison officials is

constitutionally protected conduct. *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003);

*Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996). Moreover, "[p]risoners ... have a

constitutional right of access to the courts and to petition the government for the redress of

grievances." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Therefore, I find that the

complaint alleges facts plausibly suggesting that Plaintiff was engaged in protected conduct.

In the following sections, I will separately examine each of the events discussed in the

complaint to determine whether the complaint alleges facts plausibly suggesting adverse actions and causal connections.

1.    <u>Magazine Incident</u>

Plaintiff alleges that Defendant Liemuex issued a false misbehavior report accusing him of possessing unauthorized material, that Defendant Chase found Plaintiff guilty, and that each acted with retaliatory motives.  (Dkt. No. 1 at 7-9; Dkt. No. 1-1 at 45.)  Plaintiff also alleges that Defendants Lopez and Benware were involved in this retaliation.  (Dkt. No. 1 at 6.)

Although this is a close case, I find that Plaintiff has alleged facts plausibly alleging that Defendants Lopez and Benware took adverse action against Plaintiff.  Plaintiff alleges that these defendants admitted to setting Plaintiff up to be caught with an unauthorized magazine "to teach him a lesson." *Id*. at 11.  The Second Circuit defines "'adverse action' objectively*,* as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.'" *Gill*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superceded by* 320 F.3d 346, 2003 U.S. App. LEXIS 13030, 2003 WL 360053 (2d Cir. Feb. 10, 2003)).  The Second Circuit has "made clear that this objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Id*.  Accepting the allegations of the complaint as true, I find that setting a person up to be punished would deter a person of ordinary firmness from exercising constitutional rights.

Plaintiff has also alleged facts plausibly suggesting that Defendants Liemuex and Chase took adverse action against him.  The filing of a misbehavior report and a guilty finding after a hearing would deter a person of ordinary firmness from exercising constitutional rights.

Therefore, I find that Plaintiff has alleged facts plausibly suggesting that Defendants Liemuex and Chase took adverse action against him.

Plaintiff has alleged facts plausibly suggesting a causal connection between his protected conduct and the adverse actions by Defendants Lopez, Benware, Liemuex and Chase. Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon*, 58 F.3d at 873). Those factors include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation. *Id.* (citing *Colon*, 58 F.3d at 872-73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.* Here, Plaintiff alleges that he filed a grievance regarding the Program in February 2010, two months before Defendant Liemuex issued the misbehavior report. (Dkt. No. 1 at 5, 7.) The Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citing *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 555) (2d Cir. 2001)) (suggesting that lapse of five months between protected activity and retaliation may show a causal connection). Plaintiff alleges that he was ultimately vindicated when the disposition of the hearing was reversed and expunged. (Dkt. No. 1-1 at 45.) And, as recounted above, Plaintiff has alleged that Defendants Lopez and Benware stated that they set Plaintiff up to teach him a lesson. Therefore, I recommend that the Court deny Defendants' motion to dismiss the retaliation claims against Defendants Lopez, Benware, Chase, and

Liemuex regarding the magazine incident.

        2.      <u>Placement in IPC Custody</u>

Plaintiff alleges that Defendants Chase and Redel retaliated against him by placing him in IPC. (Dkt. No. 1 at 10-11.) Defendants argue that this action was not "adverse" because, as Plaintiff admits on the face of the complaint, sex offenders are at risk in the general population. (Dkt. No. 23 at 13.) Defendants are correct. The complaint does not allege facts plausibly suggesting that placement in IPC would deter a similarly situated person of ordinary firmness from exercising constitutional rights. However, Plaintiff's opposition to the motion to dismiss explains that being placed in IPC negatively impacted his ability to attend the Program and access the law library. (Dkt. No. 27 at 5.) It is possible that these allegations, if pleaded, could plausibly suggest adverse action. Therefore, I recommend that the Court dismiss this claim with leave to amend.

        3.      <u>Removal from the Program</u>

Plaintiff alleges that Defendants Lopez, Benware, and Chase retaliated against him by removing him from the Program. (Dkt. No. 1 at 18.) Defendants move to dismiss this claim, arguing that "[t]here is no causal connection alleged between these acts and the grievances." (Dkt. No. 23 at 12.) It appears that Defendants do not dispute that removing Plaintiff from the Program constituted an "adverse action."

Considering the factors discussed above,[11] I find that the complaint alleges facts plausibly suggesting a causal connection. First, the complaint alleges facts plausibly suggesting temporal

---

[11]      Only two of the factors are applicable to this claim because it does not involve an allegedly false misbehavior report.

proximity between Plaintiff's grievances and his removal from the Program. Plaintiff alleges

that he filed grievances or court actions in February, April, June, and July 2010. (Dkt. No. 1 at 5,

7, 10, 12.) Plaintiff was removed from the Program twice: temporarily in May 2010 and

permanently in July 2010. *Id*. at 9, 13. The temporary removal occurred at about the same time

that Plaintiff filed grievances regarding the magazine incident. *Id*. at 7, 9. The July removal

occurred immediately after Plaintiff filed an Article 78 proceeding. *Id*. at 12-13. Second, the

complaint alleges facts plausibly suggesting that Defendants made statements concerning their

retaliatory motives. In particular, Plaintiff alleges that Defendant Benware told him to stop filing

grievances. *Id*. at 12. Therefore, I recommend that the Court deny Defendants' motion to

dismiss Plaintiff's retaliation claims regarding his removal from the Program.

      4.   <u>Placement in the General Population</u>

     Plaintiff alleges that Defendants Lopez and Benware retaliated against him by placing

him in the general population. *Id*. at 13. Defendants move to dismiss this claim, arguing that

"[t]here is no causal connection alleged between these acts and the grievances." (Dkt. No. 23 at

12.) It appears that Defendants do not dispute that placing Plaintiff in the general population

constituted an "adverse action."

     Plaintiff has alleged facts plausibly suggesting a causal connection between the Article 78

proceeding he filed in July 2010 and his placement in the general population. The complaint

alleges that the parties were served with the Article 78 pleadings in July 2010. (Dkt. No. 1 at

12.) The complaint alleges that after the parties were served, Defendant Benware became irate

during a group program and told Plaintiff to stop filing grievances. *Id*. The complaint alleges

that Defendants Lopez and Benware placed Plaintiff in the general population soon thereafter.

*Id.* at 13. Therefore, I recommend that the Court deny Defendants' motion to dismiss Plaintiff's retaliation claim regarding his placement in the general population.

    5.    <u>Transfer</u>

Plaintiff alleges that Defendants Lopez, Benware, and Chase retaliated against him by transferring him to another facility. (Dkt. No. 1 at 18-19.) Defendants move to dismiss this claim. (Dkt. No. 23 at 12.) For the reasons discussed below, I recommend that the Court grant Defendants' motion and dismiss this claim with leave to amend.

The transfer of a prisoner is not considered an "adverse action" unless it results in the prisoner being subjected to more onerous conditions. *See Coleman v. Sutton,* 530 F. Supp. 2d 451, 453 (W.D.N.Y. 2008) (prisoner failed to state a retaliation claim where he did not allege that conditions into which he was transferred were more onerous than his original placement). *Compare Shine v. Hofman*, 548 F. Supp. 2d 112 (D. Vt. 2008) (transfer from general population to "close custody"). Here, Plaintiff has not alleged that the conditions he experienced at the facility to which he was transferred were more onerous than the conditions he experienced at his original facility. Therefore, I recommend that the Court dismiss this claim with leave to amend.

    6.    <u>Law Library and Notary Access</u>

Plaintiff alleges that Defendant Redel retaliated against him by denying him access to the law library and a notary. (Dkt. No. 1 at 19, 20.) Defendants move to dismiss this claim. (Dkt. No. 23 at 12-13.)

As currently plead, the complaint does not state a retaliation claim against Defendant Redel. The complaint does not state when Defendant Redel denied Plaintiff access to the law library and notary, so the Court cannot assess the temporal proximity of the denials to Plaintiff's

protected conduct. The complaint does not allege that Defendant Redel made any statements concerning a retaliatory motive. Therefore, I recommend that the Court dismiss the retaliation claims against Defendant Redel with leave to amend.

       7.     <u>Failure to Remove SOP Sign From Plaintiff's Cell</u>

Construed broadly, the complaint alleges that Defendant Chase retaliated against Plaintiff by not removing a sign from Plaintiff's general population cell indicating that Plaintiff was a sex offender. (Dkt. No. 1 at 9-10.) Defendants have not addressed this claim. I recommend that the Court dismiss the claim *sua sponte* with leave to amend.

The Second Circuit has held in the context of employment law that where "timing is the only basis for a claim of retaliation . . . an inference of retaliation does not arise . . . ." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). The Second Circuit routinely cites to employment cases when discussing retaliation in the prison law context. *See, e.g., Espinal*, 558 F.3d at 129 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). Thus, it is appropriate to apply the *Slattery* rule here. Timing is the only basis for a retaliation claim against Defendant Chase regarding the failure to remove the SOP sign. The complaint does not allege that Defendant Chase made any statements regarding any retaliatory motive for failing to remove the sign. Indeed, the complaint does not even clearly allege that Defendant Chase saw the sign. Therefore, I recommend that the Court *sua sponte* dismiss this claim with leave to amend.

    **D.**    **Due Process Claims**

Plaintiff alleges that Defendants Chase and Liemuex violated his right to due process in the course of the disciplinary hearing that followed the magazine incident. (Dkt. No. 1 at 17, 22,

23.)  Construed broadly, the complaint may also assert due process claims against Defendants Chase and Redel regarding Plaintiff's IPC confinement.  *Id*. at 10-11.  Defendants move to dismiss these claims, arguing that Plaintiff was not deprived of any actionable liberty interest. (Dkt. No. 23 at 14-16.)  Defendants are correct.

In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly suggesting that he was deprived of a liberty interest without due process of law.  *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).  An inmate has a liberty interest in remaining free from a confinement or restraint where the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Tellier*, 280 F.3d at 80; *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

In the Second Circuit, determining whether a disciplinary confinement constituted an "atypical and significant hardship" requires examining "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement."  *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).  Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an "atypical and significant hardship" only if "the conditions were more severe than the normal SHU conditions."[12]  *Id*.

Here, the complaint alleges that Plaintiff served thirty days in keeplock as a result of the disciplinary hearing.  (Dkt. No. 1 at 9.)  The complaint alleges that Plaintiff served another five

---

[12]      "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week.  *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004).

days in IPC. *Id.* at 10, 11. This total is far less than 101 days. Plaintiff has not alleged that he

was confined in conditions more severe than normal SHU conditions. Normally I would

recommend that the Court dismiss these claims with leave to amend. However, Plaintiff admits

in his opposition to the motion to dismiss that he did not suffer atypical and significant hardship

during his keeplock and IPC confinements. (Dkt. No. 27 at 12.) Therefore, I recommend that the

Court dismiss Plaintiff's due process claims without leave to amend.

### E.     Claims Regarding Violations of DOCCS Directive 4040

The complaint asserts five claims that Defendants violated DOCCS Directive 4040,

which prohibits staff reprisals against inmates. (Dkt. No. 1 at 23, 24-25.) Defendants move to

dismiss these causes of action, arguing that such allegations fail to state a federal claim. (Dkt.

No. 23 at 14.) Defendants are correct.

Violations of state law do not give rise to claims under 42 U.S.C. § 1983. *Young v. Cnty.*

*of Fulton*, 160 F.3d 899, 902 (2d Cir. 1998). More specifically, a violation of a DOCCS

directive does not state a claim for a constitutional violation under § 1983. *See Dillhunt v.*

*Theriault*, No. 9:07-CV-0412 (GTS/DEP), 2009 U.S. Dist. LEXIS 117125, at * 3, 2009 WL

4985477, at *11 (N.D.N.Y. Dec. 15, 2009).[13]  Therefore, I recommend that the Court dismiss

these claims without leave to amend.

### F.     Verbal Harassment Claims

The complaint asserts three claims that mention verbal harassment. (Dkt. No. 1 at 17,

23.) The first involves Defendant Lopez's statement at a Program meeting that Plaintiff would

---

[13]     The Court will provide Plaintiff with a copy of this unpublished decision in
accordance with the Second Circuit's decision in *LeBron*, 557 F.3d 76.

be found guilty and punished for possessing an unauthorized magazine. *Id.* at 17. The second involves Defendant Chase's statement to Plaintiff that he should not file a grievance regarding his placement in IPC because the issue was not grievable. *Id.* at 23. The third involves Defendant Benware's statement to Plaintiff that he should stop filing grievances. *Id.* Defendants move to dismiss these claims, arguing that claims of verbal harassment are not independently actionable. (Dkt. No. 23 at 16-17.) Defendants are correct.

Although a defendant's statements may be relevant to other claims, verbal harassment, in and of itself, does not rise to the level of a constitutional violation. *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 364 (N.D.N.Y. 2010); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) ("Allegations of threats or verbal harassment, without any injury or damage, do not state a claim under 42 U.S.C. § 1983."). Therefore, I recommend that the Court dismiss Plaintiff's verbal harassment claims without leave to amend.

### G.     Eighth Amendment Claims

The complaint asserts that Defendants violated the Eighth Amendment by removing him from the Program and by placing him in the general population. (Dkt. No. 1 at 19, 20.) Defendants move to dismiss these claims, arguing that they fail to state a constitutional claim because participation in the Program "is not a basic human need and no physical harm resulted from the removal . . . ." (Dkt. No. 23 at 17-18.) Defendants are correct.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Thus, the Eighth Amendment imposes on jail officials the duty to

"provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

To state an Eighth Amendment claim, a plaintiff must plead both an objective and a subjective component. *Id*. at 834. To satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To allege facts plausibly suggesting the objective component of an Eighth Amendment conditions of confinement claim, a prisoner must plead facts suggesting that the defendant's "act or omission ... result[ed] in the denial of the minimal civilized measure of life's necessities." *Id*. Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Here, Plaintiff has not alleged any such facts. It is apparent from the face of the current pleading that Plaintiff could not amend his Eighth Amendment claims to cure this defect. Therefore, I recommend that the Court dismiss Plaintiff's Eighth Amendment claims without leave to amend.

### H.     Equal Protection Claim

The complaint alleges that Defendants violated Plaintiff's right to equal protection by removing him from the Program. (Dkt. No. 1 at 19.) Defendants move to dismiss this claim, arguing that Plaintiff has not stated a claim because he has not alleged that he was treated differently from any similarly situated individual. (Dkt. No. 23 at 18-19.) Defendants are correct.

The Equal Protection Clause provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). Governmental action may also violate the Equal Protection Clause where the defendants intentionally treat the plaintiff "differently from others with no rational basis for the difference in treatment." *Id*. (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Thus, a plaintiff asserting an equal protection claim must allege facts plausibly suggesting that (1) he was treated differently from similarly situated individuals; and (2) the defendants treated him differently due to his membership in a suspect class, inhibited his exercise of a fundamental right, acted out of malice, or acted irrationally and arbitrarily.

Here, Plaintiff has not alleged that he was treated differently from any similarly situated individual. Therefore, I recommend that the Court dismiss Plaintiff's equal protection claim with leave to amend.

I.      **Claim Regarding Violation of Criminal Statute**s

The complaint asserts a claim that Defendants violated 18 U.S.C. §§ 241 and 242, which are federal criminal statutes prohibiting conspiracy and civil rights violations. (Dkt. No. 1 at 19.)

24

Defendants move to dismiss this cause of action, arguing that the statutes do not authorize civil suits or give rise to civil liability. (Dkt. No. 23 at 19-20.) Defendants are correct. *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 220 (D. Conn. 2010); *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985). Therefore, I recommend that the Court dismiss this claim without leave to amend.

## J.    Interference with Mail

Construed broadly, the complaint may assert a claim that Defendants violated Plaintiff's constitutional rights by interfering with his mail. (Dkt. No. 1 at 6-7.)

"A prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis*, 320 F.3d at 351. A prisoner's right to receive and send mail may, however, be regulated. *See, e.g., Davidson v. Mann*, 129 F.3d 700, 702 (2d Cir. 1997). When challenges are brought to such regulations, "courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Davis,* 320 F.3d at 351. District courts in the Second Circuit have articulated the test for analyzing regulations on prisoners' mail in two ways. Some courts have applied the formulation set out in *Davis*, which states that "[r]estrictions on prisoners' mail are justified only if they further one or more of the substantial governmental interests of security, order, and rehabilitation and must be no greater than is necessary or essential to the protection of the governmental interest involved." *Id*. (citations and punctuation omitted).[14] Other courts have

_____

[14]    Examples of courts applying the *Davis* test include *LeBron v. Selsky*, No. 05-CV-172, 2009 U.S. Dist. LEXIS 126401, at *35-36, 2009 WL 6312275, at *11 (N.D.N.Y. Sept. 11, 2009) (Suddaby, J.) (Homer, M.J.) (applying *Davis* test to prisoner's claim that prison officials violated his First Amendment rights by placing him under a 'mail watch' and monitoring all of his outgoing mail) and *Midalgo v. Bass*, No. 9:03-CV-1128, 2006 U.S. Dist. LEXIS 69030, 2006

applied the formulation set out in *Turner v. Safley*, 482 U.S. 78, 89 (1987), which states that

"when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it

is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.[15]  The Second

Circuit itself has applied both standards.  *Davis*, 320 F.3d at 351 (applying *Davis* test to

prisoner's claim that mailroom clerk, on two occasions, opened outgoing legal mail); *Johnson v.*

*Goord*, 445 F.3d 532, 534 (2d Cir. 2006) (applying *Turner* test to prisoner's challenge to prison

regulation limiting keeplock prisoners to one stamp per month for personal, non-legal use);

*Duamutef v. Hollins*, 297 F.3d 108 (2d Cir. 2002) (applying *Turner* test to prisoner's claim that

prison officials violated his First Amendment rights by placing a watch on all of his outgoing and

incoming non-privileged mail).

  Under the *Turner* standard, the burden is on the plaintiff to show that Defendants'

conduct was not reasonably related to legitimate penological interests.  *Shakur v. Selsky*, 391

F.3d 106, 113 (2d Cir. 2004).  The Second Circuit "has repeatedly found, without doubt, a valid,

rational connection between the decision to impose a watch on a prisoner's mail and the desire to

ensure the good order of the prison and the rehabilitation of prisoners by preventing a prisoner

from engaging in illegal activities while incarcerated."  *Duamutef*, 297 F.3d at 112 (citation and

---

WL 2795332, at *12 (N.D.N.Y. Sept. 26, 2006) (Mordue, C.J.) (Treece, M.J.) (applying *Davis* to prisoner's claim that officer read his outgoing legal mail).

  [15]  Examples of courts applying the *Turner* test include *Robinson v. N.Y. State Dep't of Corr. Servs.*, No. 9:08-CV-911, 2009 U.S. Dist. LEXIS 92294, at *29-36, 2009 WL 3246818, at *10-11 (N.D.N.Y. Sept. 30, 2009) (McAvoy, J.) (DiBianco, M.J.) (applying *Turner* to prisoner's claim that his outgoing mail was delayed while commissary purchase of stamps was processed) and  *Mitchell v. N.Y. State Dep't of Corr. Servs*, No. 06-CV-6278, 2009 U.S. Dist. LEXIS 5157, at *11-14, 2009 WL 185757, at *3 (W.D.N.Y. Jan. 26, 2009) (applying *Turner* to prisoner's claim that mailroom tampered with his mail).

punctuation omitted); *see also United States v. Workman*, 80 F.3d 688, 699 (2d Cir. 1996) ("The investigation and prevention of ongoing illegal activity constitute legitimate penological objectives.").

Here, because the complaint does not specify what material was in the mail with which Defendants allegedly interfered, Plaintiff has not met his burden of showing that Defendants' conduct was unreasonable. Therefore, I recommend that the Court *sua sponte* dismiss this claim with leave to amend.

### K.     Access to Courts

Construed broadly, the complaint asserts a claim that Defendant Redel interfered with Plaintiff's access to the courts. (Dkt. No. 1 at 19-20.) Defendants have not addressed this claim.

"A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir. 1986) (citing *Bounds v. Smith,* 430 U.S. 817, 821-23 (1977)). This right of access, however, guarantees a prisoner "no more than reasonable access to the courts." *Herrera v. Scully,* 815 F. Supp. 713, 725 (S.D.N.Y. 1993) (citing *Pickett v. Schaefer,* 503 F. Supp. 27, 28 (S.D.N.Y. 1980)). To state a claim for denial of access to the courts, a plaintiff must allege facts plausibly suggesting that (1) the defendant acted deliberately and maliciously, and (2) the plaintiff suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 353 (1996); *Howard v. Leonardo*, 845 F. Supp. 943, 946 (N.D.N.Y. 1994) (Hurd, M.J.).

Here, Plaintiff has not alleged facts plausibly suggesting that he suffered any actual injury from Defendant Redel's alleged interference with his access to the courts. Therefore, I

recommend that the Court dismiss this claim *sua sponte* with leave to amend.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 23) be **GRANTED IN PART AND DENIED IN PART**.

**IT IS RECOMMENDED** that the Court dismiss the following claims without leave to amend: (1) all claims against Defendants in their official capacities; (2) all claims alleging conspiracy; (3) all claims alleging violations of DOCCS directives; (4) all claims alleging verbal harassment; (5) all Eighth Amendment claims; (6) the claim alleging violations of federal criminal statutes; and (7) the due process claim against Defendants Liemuex and Chase regarding the misbehavior report and disciplinary hearing; and it is further

**RECOMMENDED** that the Court dismiss the following claims with leave to amend: (1) the retaliation claim against Defendants Lopez, Benware, and Chase regarding Plaintiff's transfer to a different facility; (2) the retaliation claims against Defendant Redel regarding access to the law library and a notary; (3) the retaliation claim against Defendant Chase regarding the failure to remove the SOP sign; (4) the equal protection claim regarding removal from the Program; (5) the retaliation claim regarding placement in IPC; (6) the interference with mail claim; and (7) the access to courts claim; and it is further

**RECOMMENDED** that Defendants be directed to respond to the following claims: (1) the retaliation claims against Defendants Lopez, Benware, Chase, and Liemuex regarding the magazine incident; (2) the retaliation claim against Defendants Lopez, Benware, and Chase regarding Plaintiff's removal from the Program; and (3) the retaliation claim against Defendants Lopez and Benware regarding Plaintiff's placement in the general population; and it is further

28

**ORDERED** that the Clerk provide Plaintiff with copies of *Tolliver v. N.Y. State Corr. Officers*, No. 99 CIV 9555, 2000 WL 1154311, at *2 (S.D.N.Y. Aug. 14, 2000); *Bond v. Board of Educ. of City of New York*, No. 97-cv-1337, 1999 WL 151702 (W.D.N.Y. Mar. 17, 1999); *See Samms v. Fischer*, No. 9:10-CV-0349 (GTS/GHL), 2011 U.S. Dist. LEXIS 97807, 2011 WL 3876528 (N.D.N.Y. Mar. 25, 2011); and *Dillhunt v. Theriault*, No. 9:07-CV-0412 (GTS/DEP), 2009 U.S. Dist. LEXIS 117125, 2009 WL 4985477 (N.D.N.Y. Dec. 15, 2009) in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: January 30, 2013
      Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge