UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRIAN TUITT,

                        Plaintiff,

v.                                                9:11-CV-0776
                                                (DNH/TWD)

P. CHASE, M. LOPEZ, N. BENWARE,
LIEMUEX, REDEL, JOHN DOES 1-3,

                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

BRIAN TUITT, 06-A-1963
Plaintiff pro se
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

HON. ERIC T. SCHNEIDERMAN               CHRISTOPHER W. HALL, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

      This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). In his original complaint, Plaintiff Brian Tuitt alleged that Defendants conspired and retaliated against him for filing grievances by filing a false misbehavior report against him, removing him from the Sex Offender Counseling and Treatment Program, wrongfully placing him in the general population,

and transferring him to a different facility. (Dkt. No. 1.) The matter is currently before the Court for screening of Plaintiff's amended complaint. (Dkt. No. 40.) For the reasons discussed below, I recommend that the Court dismiss the equal protection, access to courts, procedural due process, verbal harassment, and conspiracy claims without leave to amend and direct Defendants to respond to the remainder of the claims in the amended complaint.

I. **BACKGROUND**

    A. **Allegations of the Original Complaint**

Unless otherwise specified, the facts in this section appear on the face of the original complaint.

In 2008, Plaintiff was mandated to enroll in the Sex Offender Counseling and Treatment Program ("the Program") at the Clinton Annex. (Dkt. No. 1 at 4.) The Program uses various therapeutic techniques to help participants recognize behaviors that may lead to committing sex offenses. *Id*. Participants in the Program are required to accept responsibility for the conduct that resulted in their criminal convictions. *Id*.

In February 2008, Plaintiff filed a grievance. (Dkt. No. 1 at 4.) One of his reasons for filing this grievance was that he was having trouble "accepting responsibility" as required by the Program because he was appealing his conviction. *Id*. However, counselors and staff in the Program worked with Plaintiff on this issue and Plaintiff ultimately excelled in the Program. *Id*. at 4-5. Plaintiff was appointed as a team leader for the Program. (Dkt. No. 1 at 5.) He earned college credits, made goals, assisted other inmates, examined his behaviors, and applied Program techniques. *Id*. at 6.

Plaintiff was informed in January 2010 that he would complete the Program. (Dkt. No. 1

at 5.) Thereafter, however, Plaintiff "started to get excuses from staff when [he] was not selected to finish the program." *Id*. Defendant N. Benware[1] told Plaintiff that he would not complete the program due to his many court appearances and his failure to confess to each and every element of his conviction offense. *Id*. Plaintiff complied but this did not satisfy Defendant Benware. *Id*.

Plaintiff filed a grievance and a state court action. (Dkt. No. 1 at 5.) On February 11, 2010, Plaintiff filed another grievance regarding Program "policies and threats of being removed." *Id*.

Plaintiff was away from the Clinton Annex from March 12, 2010, to April 12, 2010, attending court hearings in New York City. (Dkt. No. 1 at 6.) While he was gone he received two packages from Westfields Comic. *Id*. Plaintiff alleges that Defendant Lieutenant P. Chase,[2] Defendant Counselor Lopez,[3] Defendant Benware, Defendant Correction Officer Liemuex,[4] and John Doe 1-3 "reviewed the contents of the packages [and] saw some questionable material which might violate [Program] policy" and then "arra[ng]ed for the plaintiff to pick up the package[s], snare the plaintiff with the material, issue a misbehavior report and attempt to remove the plaintiff from the program and/or delay his date of finishing the program." *Id*.

---

[1] Defendant N. Benware is a licensed social worker for the Program. (Dkt. No. 1 at 2.) He interviews, tests, and counsels participants in the program and is responsible for treating and monitoring them. *Id*.

[2] Defendant Chase is in charge of security for the Program. (Dkt. No. 1 at 2.) He also acts as the hearing officer when an inmate from the Program receives a misbehavior report. *Id*.

[3] Defendant Lopez is the Senior Counselor of the Program. (Dkt. No. 1 at 2.) As such, he oversees the Program and maintains the welfare of the inmates and staff. *Id.*

[4] Defendant Correction Officer Liemuex works in the general population at Clinton Annex and is responsible for the safety and welfare of the inmate population. (Dkt. No. 1 at 2.)

On April 14, 2010, Plaintiff was informed by the package room officer that his magazines were at Media Review and that he would have to wait several days to receive them. (Dkt. No. 1 at 6.) Plaintiff received a large manila envelope the next morning from Media Review. *Id*. The envelope contained magazines and a letter. *Id*. When Plaintiff opened the envelope, Defendant Liemuex walked up to Plaintiff, confiscated the magazines, and told Plaintiff that the magazines had to be re-reviewed by staff. *Id*. at 6-7. Later, Defendant Liemuex issued a misbehavior report charging Plaintiff with possessing unauthorized material. (Dkt. No. 1 at 7; Dkt. No. 1-1 at 4-5.)

Plaintiff filed a grievance, claiming that he was being retaliated against. (Dkt. No. 1 at 7.)

On May 3, 2010, Plaintiff attended a Program community meeting. (Dkt. No. 1 at 7.) At that meeting, Defendant Lopez "addressed the community in an angry . . . speech about failures and punishing people." *Id*. Turning to Plaintiff, he stated that "the inmate that was caught with pornography . . . will be punished and will go to the box." *Id*. This speech "confirmed to the plaintiff that his hearing outcome was pre-determined." *Id*.

Plaintiff told Defendant Chase, the hearing officer, that Defendant Lopez had publicly pre-determined Plaintiff's guilt. (Dkt. No. 1 at 7-8.) Defendant Chase angrily refused to believe Plaintiff. *Id*. at 8. Defendant Chase then conducted a biased disciplinary hearing. *Id*. at 8-9. Plaintiff was found guilty, removed from the Program, sent to another part of the facility, and kept in keeplock for thirty days with loss of all privileges. *Id*. at 9.

Plaintiff appealed the result of his disciplinary hearing. (Dkt. No. 1 at 10.) When his appeal was denied he filed a proceeding in New York state court pursuant to Article 78. *Id*. In February 2011, the Deputy Superintendent of Security at Coxsackie Correctional Facility

reversed and expunged the disposition of the hearing that Defendant Chase conducted. (Dkt. No. 1-1 at 45.) Thereafter, Plaintiff received a letter from an assistant Solicitor General informing him that the office would not be contesting the Article 78 proceeding. (Dkt. No. 1 at 14.) By the time this occurred Plaintiff had already served his keeplock sentence.

When Plaintiff was moved to serve his keeplock sentence, an unknown block officer placed a paper marked "SOP" (an acronym for "Sex Offender Program") in Plaintiff's cell. (Dkt. No. 1 at 9.) "This sign clearly marked the plaintiff's cell and its occupant [as] a sex offender. This cell is in front of a general population dorm. This placed the plaintiff in fear of his safety." *Id*. at 9-10. Defendant Chase "visited the location and did not do anything to remove this sign." *Id*. at 10.

While Plaintiff was serving his keeplock sentence, another inmate informed Plaintiff that he had overheard Defendant Chase telling John Doe 1-3 that he was "going to take care of Tuitt and put an end to our problem." (Dkt. No. 1 at 10.)

Plaintiff finished his keeplock sentence on June 2, 2010. (Dkt. No. 1 at 10.) As he was packing, he received an Involuntary Protective Custody ("IPC") referral ticket issued by Defendant Chase. *Id*. As a result, Plaintiff had to remain in confinement until a hearing was conducted. *Id*. Defendant Chase told Plaintiff that he could not file a grievance because the issue was non-grievable. *Id*. Plaintiff filed a grievance anyway. *Id*.

The hearing was conducted on June 7, 2010. (Dkt. No. 1 at 10.) Plaintiff and Defendant Chase testified. *Id*. at 10-11. Defendant Chase testified that placing Plaintiff in IPC was

5

Defendant Redel's[5] idea. *Id.* at 11. The hearing officer released Plaintiff from IPC. *Id.*

When Plaintiff returned to the Program, Defendants Lopez and Benware "admitted that they arranged for the plaintiff to be caught with the magazine and to give him a harsh punishment to teach him a lesson." (Dkt. No. 1 at 11.) Defendants Lopez and Benware told Plaintiff that he would have to "openly admit that he has a problem with pornography . . . and it was part of his cycle to commit sex offenses. If the plaintiff did not, he would be removed from the program and would be considered in denial." *Id.* Plaintiff complied. *Id.* However, Defendant Benware "was not satisfied with his presentation and wanted a better admission." *Id.* at 12. Defendant Benware's "behavior and attitude transmitted to the plaintiff that the defendant wanted the plaintiff to fail, get in serious trouble and he would make sure it would happen." *Id.*

Plaintiff, "fearing that he would be subjected to a retaliatory attack," filed another Article 78 proceeding. (Dkt. No. 1 at 12.) The court issued an order directing Defendants to allow Plaintiff to remain in the Program pending resolution of the proceeding. *Id.*

On or about July 14, 2010, after all the parties were served with the Article 78 pleadings, Defendant Benware became agitated and irate during a group session with Plaintiff. (Dkt. No. 1 at 12.) This was despite the fact that, a few days earlier, he had informed Plaintiff that he was on the fast track to finish the Program. *Id.* Defendant Benware called Plaintiff a liar and told Plaintiff to stop filing grievances. *Id.* As a result, Plaintiff "lost all trust" in the Program and feared retaliation. *Id.* at 13. He filed another grievance. *Id.*

---

[5] Defendant Correction Officer Redel works in the law library at Clinton Annex and oversees the operation and safety of the inmates who work in and use the law library. (Dkt. No. 1 at 2.) Previously she was assigned to work in the Program for several months. (Dkt. No. 1 at 2.)

6

Defendants Lopez and Benware removed Plaintiff from the Program and placed him in the general population, where he was at risk as an identified sex offender. (Dkt. No. 1 at 13.) Defendants Lopez and Benware told Plaintiff that the Article 78 court's order meant nothing to them. *Id*.

A few days after Plaintiff was placed in the general population, Defendant Chase met with Plaintiff, informed him that he should not have been placed in the general population, and told Plaintiff to pack his belongings and go back to the Program. (Dkt. No. 1 at 13.)

Plaintiff was ultimately transferred out of the facility. (Dkt. No. 1 at 14.) His Article 78 proceeding was then dismissed as moot. *Id*. Plaintiff believes that Defendants transferred him deliberately to avoid court action. *Id*.

The original complaint alleged that Defendant Redel prevented Plaintiff from accessing the law library in retaliation for Plaintiff filing grievances and court actions. (Dkt. No. 1 at 19.) Plaintiff also alleged that Defendant Redel violated a court order by denying Plaintiff access to a notary. *Id*. at 20.

The original complaint alleged that Defendants violated the Department of Corrections and Community Supervision's Directive 4040, which prohibits reprisals by staff. (Dkt. No. 1 at at 23-25.)

Plaintiff filed this lawsuit on July 8, 2011. (Dkt. No. 1.) In the original complaint, Plaintiff asserted thirty-five causes of action. *Id*. at 17-25. Plaintiff requested declaratory relief, injunctive relief, credit for the loss of thirty-seven days lost in the Program, compensatory damages, punitive damages, nominal damages, costs, and fees. *Id*. at 26.

### B. Defendants' Motion to Dismiss

Defendants moved to dismiss the original complaint. (Dkt. No. 23.) Plaintiff opposed the motion. (Dkt. Nos. 27 and 31.) Defendants argued that (1) the Eleventh Amendment barred Plaintiff's claims against Defendants in their official capacities; (2) the intracorporate conspiracy doctrine barred Plaintiff's conspiracy claims; (3) the complaint failed to state a retaliation claim; (4) the complaint failed to state a due process claim because Plaintiff was not deprived of a liberty interest; (5) violations of state law do not state a federal claim; (6) verbal harassment is not actionable under § 1983; (7) the complaint failed to state an Eighth Amendment claim; (8) the complaint failed to state an equal protection claim; and (9) the criminal statutes cited in the original complaint do not authorize civil lawsuits. (Dkt. No. 23.) Defendants did not address Plaintiff's claims regarding interference with his mail or access to the courts.

### C. Ruling on Defendants' Motion to Dismiss

The undersigned issued a Report-Recommendation granting Defendants' motion in part and denying it in part. (Dkt. No. 37.) Specifically, I recommended dismissing the following claims without leave to amend: (1) the official capacity claims; (2) the conspiracy claims; (3) the due process claims; (4) the claims regarding violations of state law; (5) the verbal harassment claims; (6) the Eighth Amendment claims; and (7) the claims regarding violations of criminal statutes. *Id.* at 28. I recommended dismissing the following claims with leave to amend: (1) the retaliation claim against Defendants Chase and Redel regarding IPC placement; (2) the retaliation claim against Defendants Lopez, Benware, and Chase regarding transfer to a different facility; (3) the retaliation claim against Defendant Redel regarding law library and notary access; (4) the retaliation claim against Defendant Chase regarding the SOP sign; (5) the equal

protection claim; (6) the interference with mail claim; and (7) the access to courts claim. *Id.* Finally, I recommended that Defendants be directed to respond to (1) the retaliation claims against Defendants Lopez, Benware, Chase, and Liemuex regarding the magazine incident; (2) the retaliation claim against Defendants Lopez, Benware, and Chase regarding Plaintiff's removal from the Program; and (3) the retaliation claim against Defendants Lopez and Benware regarding Plaintiff's placement in the general population. *Id.*

Before the Court acted on the Report-Recommendation, Plaintiff filed an amended complaint. (Dkt. No. 40.) Thereafter, the Court adopted the Report-Recommendation and referred the amended complaint to the undersigned for review. (Dkt. No. 42.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 1915A (2006), "[t]he court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a[n] . . . employee of a governmental entity." 28 U.S.C. § 1915A(a) (2006). In conducting this review, "the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b)(1-2) (2006). In addition, 28 U.S.C. § 1915(e) directs that when a party proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious[,] fails to state a claim on which relief may be granted[,] or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B) (2006).[6]

---

[6] In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (superceded by statute on other grounds).

Although the court has the duty to show liberality towards pro se litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a pro se action, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), there is a responsibility on the court to determine that an action states a claim and that the claim is not frivolous before permitting a party to continue proceeding *in forma pauperis*. *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint sua sponte if the complaint is frivolous).

### III. ANALYSIS

#### A. Retaliation Claim Regarding IPC Placement

The Court dismissed Plaintiff's retaliation claim against Defendants Chase and Redel regarding his placement in IPC because the original complaint did not sufficiently allege adverse action. (Dkt. No. 37 at 16.) Specifically, the Court stated that the complaint failed to plead facts plausibly suggesting that placement in IPC would deter a similarly situated person of ordinary firmness from exercising constitutional rights. *Id.* Plaintiff was granted leave to amend because Plaintiff's opposition to the motion to dismiss explained "that being in IPC negatively impacted his ability to attend the Program and access the law library." *Id.* The Court stated that it "is possible that these allegations, if pleaded, could plausibly suggest adverse action." *Id*.

The amended complaint alleges that, due to being placed in IPC, Plaintiff "missed the next class to finish the program." (Dkt. No. 40 ¶ 47.) This statement of adverse action is sufficient for the purposes of initial screening. Therefore, it is recommended that the Court direct Defendants Chase and Redel to respond to Plaintiff's retaliation claim regarding IPC placement.

### B. Retaliation Claim Regarding Transfer to Another Facility

The Court dismissed Plaintiff's retaliation claim against Defendants Lopez, Benware, and Chase regarding his transfer to another facility because the original complaint did not sufficiently allege adverse action. (Dkt. No. 37 at 18.) The Court noted that Plaintiff had "not alleged that the conditions he experienced at the facility to which he was transferred were more onerous than the conditions he experienced at the original facility." *Id.* The Court granted Plaintiff leave to amend to allege the existence of any such conditions. *Id.*

In the amended complaint, Plaintiff alleges that conditions at the Coxsackie and Franklin Correctional Facilities were more onerous than the conditions he lived in at Clinton. (Dkt. No. 40 ¶¶ 60-65.) These allegations are sufficient for the purposes of initial screening. Therefore, it is recommended that the Court direct Defendants Lopez, Benware, and Chase to respond to Plaintiff's retaliation claim regarding his transfer to a new facility.

### C. Retaliation Claim Regarding Access to Law Library and Notary

The Court dismissed Plaintiff's retaliation claim against Defendant Redel regarding access to the law library and a notary because the original complaint did not sufficiently allege any causal connection between any protected conduct and Defendant Redel's actions. (Dkt. No. 37 at 18.) The Court granted Plaintiff leave to amend to allege facts such as temporal proximity or statements by Defendant Redel regarding her motivation. *Id.* at 18-19. The amended complaint alleges that Defendant Redel refused access to the law library and a notary despite being ordered by a court to provide that access. (Dkt. No. 40 ¶¶ 49-51.) The amended complaint further alleges that Defendant Redel stated that "she did not care for any Court Order and will not honor it." *Id*. These allegations are sufficient for the purposes of initial screening.

11

Therefore, it is recommended that the Court direct Defendant Redel to respond to Plaintiff's retaliation claim regarding access to the law library and a notary.

### D. Retaliation Claim Regarding SOP Sign

The Court sua sponte dismissed Plaintiff's retaliation claim against Defendant Chase for failing to remove the SOP sign because the original complaint did not sufficiently allege any causal connection between any protected conduct and Defendant Chase's failure to act. (Dkt. No. 37 at 19.) Specifically, the Court noted that "where timing is the only basis for a claim of retaliation an inference of retaliation does not arise" and that the "complaint does not allege that Defendant Chase made any statements regarding any retaliatory motive [and] does not even clearly allege that Defendant Chase saw the sign." *Id.* The Court granted Plaintiff leave to amend to allege further facts plausibly suggesting a causal connection between Plaintiff's protected conduct and the failure to remove the SOP sign. *Id.*

In the amended complaint, Plaintiff alleges that Defendant Chase saw the sign. (Dkt. No. 40 ¶ 41.) Plaintiff alleges that he filed grievances about the sign. *Id.* ¶ 42. He alleges that he heard Defendant Chase saying that he was "going to take care of Mr. Tuitt and put an end to our problem." *Id.* ¶ 43. These allegations are sufficient for the purposes of initial screening. Therefore, it is recommended that the Court direct Defendant Chase to respond to Plaintiff's retaliation claim regarding the failure to remove the SOP sign.

### E. Equal Protection Claim

The Court granted Defendants' motion to dismiss Plaintiff's equal protection claim because the complaint did not allege facts plausibly suggesting that Plaintiff was treated differently from any similarly situated individual. (Dkt. No. 37 at 24.) The Court granted

12

Plaintiff leave to amend to allege the existence of such an individual. *Id.* The amended complaint does not cure this defect in the original pleading. While Plaintiff cursorily alleges that he "suffered adverse treatment f[ro]m other inmates because he attempted to resolve . . . issues through the use of grievances," he does not identify any particular similarly situated individuals who received different treatment. (Dkt. No. 40 at 29-30.) Such cursory allegations do not meet the plausibility standard required by *Twombly* and *Iqbal*. *See Ruston v. Town Bd.*, 610 F.3d 55, 58-60 (2d Cir. 2010); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 697 n.10 (S.D.N.Y. 2011). Therefore, it is recommended that the Court dismiss the equal protection claim.

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). Of course, an opportunity to amend is not required where the plaintiff has already amended the complaint. *See Advanced Marine Tech. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once). In addition, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted). Here, Plaintiff has already been given one opportunity to cure the defect with his equal protection claim. His proposed amendment does not cure the defect. Therefore, it is recommended that the Court dismiss the equal protection claim without leave to amend.

F.     **Interference with Mail Claim**

The Court sua sponte dismissed Plaintiff's claim that Defendants interfered with his mail because the complaint did not specify what material was in the mail with which Defendants allegedly interfered. (Dkt. No. 37 at 25-27.) The Court granted Plaintiff leave to amend to allow Plaintiff to allege facts plausibly suggesting that Defendants' conduct was unreasonable. *Id.* at 27. Other than a retaliation claim regarding the magazine incident, it does not appear that Plaintiff is pursuing an independent claim regarding interference with mail in the amended complaint. Therefore, Defendants should not be required to respond to this claim.

G.     **Access to Courts Claim**

The Court sua sponte dismissed Plaintiff's access to courts claim against Defendant Redel because the complaint did not plead facts plausibly suggesting that Plaintiff suffered any actual injury from the alleged interference. (Dkt. No. 37 at 27.) The Court granted Plaintiff leave to amend to allege such an injury. *Id.* at 27-28. The amended complaint alleges no such injury. Plaintiff merely alleges that he "was forced to apply for an extension, which delayed" his filing of a court document. (Dkt. No. 40 ¶ 69.) Plaintiff does not allege that the extension was denied, that he was unable to meet the new deadline because of Defendants' actions, or that any legal claim was dismissed as a result. Therefore, I recommend that the Court dismiss Plaintiff's access to courts claim against Defendant Redel without leave to amend.

H.     **Claims That Survived the Motion to Dismiss**

Plaintiff's retaliation claims regarding the magazine incident, his removal from the Program, and his placement in the general population survived Defendants' motion to dismiss. (Dkt. No. 42 at 3.) Those claims are sufficiently well-pleaded in the amended complaint to

survive initial review. Therefore, it is recommended that the Court direct Defendants to respond to those claims.

I.      **Claims Dismissed Without Leave to Amend**

Plaintiff's claims against Defendants in their official capacities, the conspiracy claims, the due process claim, the claim regarding violation of Directive 4040, the claim of verbal harassment, the Eighth Amendment claims regarding removal from the Program and placement in the general population, and the claim regarding violations of criminal statutes were dismissed without leave to amend. (Dkt. No. 42 at 2.) The amended complaint attempts to reassert the due process claim. (Dkt. No. 40 ¶¶ 73, 78.) It is recommended that the claim be dismissed again without leave to amend. Plaintiff also appears to be attempting to reassert a verbal harassment claim against Defendant Lopez. *Id*. ¶ 74. Plaintiff also appears to be attempting to reassert a conspiracy claim against Defendants Benware, Liemuex, and Chase. *Id*. ¶ 81. It is recommended that the claim be dismissed against without leave to amend. It does not appear that Plaintiff has attempted to reassert the other claims dismissed without leave to amend.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Court dismiss the equal protection, access to courts, procedural due process, verbal harassment, and conspiracy claims without leave to amend; and it is further

**RECOMMENDED** that Defendants be directed to respond to the following claims in the manner provided by the Federal Rules of Civil Procedure: (1) the retaliation claim against Defendants Chase and Redel regarding IPC placement; (2) the retaliation claim against Defendants Lopez, Benware, and Chase regarding transfer to another facility; (3) the retaliation

15

claim against Defendant Redel regarding access to the law library and a notary; (4) the retaliation claim against Defendant Chase regarding the SOP sign; (5) the retaliation claim against Defendants Liemuex, Benware, and Chase regarding the magazine incident; (6) the retaliation claim against Defendants Lopez, Benware, and Chase regarding Plaintiff's removal from the Program; and (7) the retaliation claim against Defendants Lopez and Benware regarding Plaintiff's placement in the general population; and it is further

**ORDERED** that the Clerk correct the docket to reflect that Defendant Redel remains an active party in this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: May 22, 2014
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge